**MICHELE A. McKENZIE** (SBN 209657)
**TIMOTHY A. SCOTT** (SBN 215074)
MCKENZIE SCOTT PC
1350 Columbia Street, Suite 600
San Diego, California 92101
Tel: (619) 794-0451
Fax: (619) 202-7461
Email:
mmckenzie@mckenziescott.com
tscott@mckenziescott.com

*Attorneys for* Sara Duvall

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SARA DUVALL,<br><br>                    Plaintiff,<br><br>vs.<br><br>CITY OF SAN DIEGO,<br><br>                    Defendant. | Case No.: __'26 CV1112 AGS BJW__<br><br>COMPLAINT FOR DECLARATORY RELIEF, INJUNCTIVE RELIEF, & DAMAGES<br><br>AND<br><br>DEMAND FOR JURY TRIAL. |

COMPLAINT - i

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## TABLE OF CONTENTS

TABLE OF AUTHORITIES .......................................................................iv

INTRODUCTION ............................................................................. 1

THE PARTIES ................................................................................ 2

JURISDICTION AND VENUE ......................................................... 2

RELEVANT STATUTORY PROVISIONS ........................................ 3

I.    Defendant City of San Diego recognizes that the City's parks, plazas, and sidewalks are traditional public forums used by the community for expressive activity. ...................................... 4

II.    Defendant City of San Diego provides no training whatsoever to its Park Rangers on free speech protections, little training on what constitutes "expressive activities" subject to First Amendment protections, and is deliberately indifferent to ongoing constitutional violations by its agents. ...................................... 6

III.   Sara Duvall is a "visual artist": she is a San Diegan who uses her artwork to communicate her personal and political beliefs, her lived experiences, and to explore color and form. ........................................... 7

IV.    Despite Ms. Duvall being a "visual artist" sharing her own original, expressive artwork and political speech, Defendant City of San Diego defines her artwork as "handcrafts" not entitled to First Amendment protections—repeatedly citing and fining her .............. 19

V.    Defendant City of San Diego ignores Ms. Duvall's appeal of her citation for months, leaving Ms. Duvall in limbo and afraid to exercise her First Amendment right to share her political beliefs and her artwork. .................................................................... 23

COMPLAINT - ii

VI.    With her appeal still unresolved after eight months, Ms. Duvall returns to Balboa Park, but is again cited and fined by Defendant City of San Diego—she files yet another appeal. ........................................25

VII.    Ms. Duvall ultimately loses her appeals when the Administrative Hearing Officer indicates he cannot consider Ms. Duvall's constitutional claims in the determination of her appeal. ...29

FIRST CLAIM – Violation of 42 U.S.C. § 1983 (Defendant City's "Sidewalk Vending Regulations" and Ordinance No. 21775 are an Unconstitutional Official Policy As-Applied to Ms. Duvall's Original Artwork Containing *Protected Speech* Under the First and Fourteenth Amendments). ........................................................................31

SECOND CLAIM – Violation of 42 U.S.C. § 1983 (Defendant City's "Sidewalk Vending Regulations" and Ordinance No. 21775 are an Unconstitutional Official Policy As-Applied to Ms. Duvall's *Original, Expressive Artwork* Under the First and Fourteenth Amendments).....34

THIRD CLAIM – Violation of 42 U.S.C. § 1983 (Unconstitutional Official Policy Under the First and Fourteenth Amendments/Due Process Clause-Vagueness). ........................................................................36

FOURTH CLAIM – Violation of 42 U.S.C. § 1983 (Unconstitutional Official Policy Under the First/Fourteenth Amendments-Overbreadth). ........................................................................39

FIFTH CLAIM – Violation of 42 U.S.C. § 1983 (Failure to Train). .......42

DEMAND FOR JURY TRIAL.................................................................44

PRAYER FOR RELIEF .........................................................................44

COMPLAINT - iii

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# TABLE OF AUTHORITIES

**Cases**

*Butcher v. Knudsen*, 38 F.4th 1163 (9th Cir. 2022) ................................ 36

*Comedy III Prods., Inc. v. Gary Saderup, Inc.*, 25 Cal. 4th 387 (2001) .. 32

*Høeg v. Newsom*, 652 F. Supp. 3d 1172 (E.D. Cal. 2023) ........................ 37

*Hubbard v. City of San Diego*, 139 F.4th 843 (9th Cir. 2025) .......... 28, 29

*Hurley v. Irish-Am. Gay, Lesbian & Bisexual Grp. of Bos.,* 515 U.S. 557
(1995) ................................................................................................ 22, 23

*Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658 (1978)
................................................................................................................ passim

*Mustaqeem v. City of San Diego*, No. D085750, 2026 WL 174947 (Cal. Ct.
App. Jan. 22, 2026) ............................................................................ 25

*White v. City of Sparks*, 500 F.3d 953 (9th Cir. 2007) ............................ 13

**Statutes**

28 U.S.C. § 1391 ...................................................................................... 2

28 U.S.C. §§ 1331, 1343(a)(3) & (4) ...................................................... 2

28 U.S.C. §§ 2201, 2202, and 1343 ........................................................ 2

42 U.S.C. § 1983 ............................................................................. passim

42 U.S.C. § 1988 ...................................................................................... 45

California Gov't Code § 900.4 ................................................................ 2

San Diego Municipal Code § 36.0101 ........................................... 1, 3, 44

San Diego Municipal Code § 63.0501 ............................................ passim

San Diego Municipal Code § 63.0502 ............................................ passim

**Rules**

Fed. R. Civ. P. 54 ................................................................................... 49

Fed. R. Civ. P. 57 ..................................................................................... 6

Fed. R. Civ. P. 65 ..................................................................................... 6

COMPLAINT - iv

1

2

**INTRODUCTION**

3

4
1.    Local San Diego artist Sara Duvall seeks to exercise her rights to

5
free speech and free expression by sharing her artwork with the

6
public at Balboa Park, and at other traditional public forums

7
within the City of San Diego–activities that are protected by the

8
First Amendment to the U.S. Constitution and Article I, Section 2

9
of the California Constitution.

10
2.    Defendant City of San Diego has cited and fined Ms. Duvall twice

11
in the last 18 months for showing her artwork in Balboa Park,

12
unilaterally determining that she is *not* a "visual artist" engaging

13
in free speech or expressive activities (pursuant to San Diego

14
Municipal Code § 63.0501, *et seq.*), but instead that her artwork is

15
a "handcraft" (see San Diego Municipal Code § 63.0502) with no

16
expressive purpose and thus she is a "sidewalk vendor" (pursuant

17
to San Diego Municipal Code § 36.0101, *et seq.*) not entitled to full

18

19
First Amendment protections.

20
3.    This suit seeks declaratory and injunctive relief to protect the

21
First Amendment rights of Ms. Duvall and other artists within the

22
City of San Diego.

23
4.    It also seeks to recover damages relating to the defense of

24
repeated administrative citations and fines resulting from the

25
unconstitutional application of the City of San Diego's municipal

26
ordinances to Ms. Duvall.

27

28

COMPLAINT - 1

## THE PARTIES

5.   Plaintiff Sara Duvall is a life-long artist and resident of the City of San Diego.

6.   Defendant City of San Diego is a municipality located in San Diego County, within the Southern District of California.

## JURISDICTION AND VENUE

7.   This Court has jurisdiction to hear this matter pursuant to 28 U.S.C. §§ 1331, 1343(a)(3) & (4).

8.   Venue is appropriate in this Court because all the events that give rise to this suit occurred in San Diego County, California. 28 U.S.C. § 1391.

9.   This Court has authority to grant the requested declaratory and injunctive relief under 28 U.S.C. §§ 2201, 2202, and 1343; Fed. R. Civ. P. 57 and 65; and the general legal and equitable powers of the Court.

10.  Prior to filing this complaint, Ms. Duvall filed a claim for damages pursuant to California Gov't Code § 900.4, *et seq*. with the City of San Diego on August 5, 2025.

11.  The City acknowledged receipt of her claim on the following day.

12.  In her claim, Ms. Duvall asked the City to change the municipal code "to make clear that an artist's original work is protected by the First Amendment, even if it is mixed media, even if it is jewelry or pottery or another medium so long as it has *an expressive purpose*."

13.  The City declined to act and denied her claim on February 9, 2026.

COMPLAINT - 2

14. This suit is timely filed.

## RELEVANT STATUTORY PROVISIONS

15. In early 2024, Defendant City of San Diego enacted Ordinance No. 21775.

16. Ordinance No. 21775 added a regulation called "Expressive Activity on Public Property" (San Diego Municipal Code § 63.0501, *et seq.*) to the Municipal Code.

17. Ordinance No. 21775 also modified Defendant City's existing "Sidewalk Vending Regulations" (San Diego Municipal Code § 36.0101, *et seq.*).

18. The 2024 updates to the municipal code delineated different sets of rules that apply to those who are engaging in "expressive activit[ies]" as opposed to those who are "sidewalk vending."

19. As a part of 2024 enactment, Defendant City attempted to define what constitutes "expressive activity" and differentiate it from what constitutes "sidewalk vending."

20. If an individual is engaging in an "expressive activity," their conduct is governed by San Diego Municipal Code § 63.0501, *et seq.*, the "Expressive Activity on Public Property" Ordinance.

21. If an individual is engaging in a "sidewalk vending," their conduct is governed by San Diego Municipal Code § 36.0101, *et seq.* the "Sidewalk Vending Regulations."

22. In broad strokes, those who are engaging in an "expressive activity" (including "visual artists" showing and selling their own

COMPLAINT - 3

artwork) do not need to obtain permits nor pay any fees *prior to* engaging in their expressive activities.

23.  In contrast, "sidewalk vendors" are required to: (a) apply and pay for annual permits from the City of San Diego to sell their food or merchandise, (b) obtain annual business tax certificates, (c) pay SB 1186 fees, and (d) pay for a photo ID. *See* "Frequently Asked Questions, Sidewalk Vending," The City of San Diego, *available at* *https://www.sandiego.gov/sidewalk-vending/faqs*.

24.  "Sidewalk vendors" are also not allowed in certain popular and beloved public forums (e.g., Balboa Park, Mission Bay Park, etc.) throughout the City of San Diego during certain extended times of the year (e.g., from Memorial Day weekend through Labor Day weekend). *See* San Diego Municipal Code §§ 36.0102, 36.0106(e), 36.0107(i).

25.  In contrast, these permit requirements, location bans, and other rules contained within Defendant City's "Sidewalk Vending Regulations" *do not apply* to "visual artists." *See generally* San Diego Municipal Code § 63.0501, *et seq.*

26.  These "Sidewalk Vending Regulations" also *do not apply* to "visual artists" engaged in the sale of their artwork in traditional public forums in the City of San Diego. *Id.*

I.  **Defendant City of San Diego recognizes that the City's parks, plazas, and sidewalks are traditional public forums used by the community for expressive activity.**

27.  As part of the "Expressive Activity on Public Property" Ordinance, Defendant City of San Diego acknowledges that "[c]ity *parks,*

COMPLAINT - 4

*plazas*, and *sidewalks* have served as a traditional forum for performances, visual artists, and other *expressive activity*." *See* San Diego Municipal Code § 63.0501(a) (emphasis in original).

28.    Defendant City of San Diego defines "expressive activity" as including: "the sale of artwork" and describes "*visual art* sold by the artist, including prints of the artist's *visual art*" as "inherently communicative in nature." *See* San Diego Municipal Code § 63.0502 (emphasis in original).

29.    Defendant City of San Diego excludes "the sale or creation of *handcrafts*" from "expressive activity." *See* San Diego Municipal Code § 63.0502 (emphasis in original).

30.    "*Handcrafts*" are defined by Defendant City as "objects made either by hand or with the help of devices used to shape or produce the objects through such methods as weaving, carving, stitching, sewing, lacing, welding, or beading, including necklaces, earrings, bracelets, rings, and other jewelry used or intended for personal adornment, pottery, silver or metal work, leather goods, and trinkets." *See* San Diego Municipal Code § 63.0502 (emphasis in original).

31.    The municipal code goes on to declare that "*Handcrafts* are objects not likely to communicate a message, idea, or concept to others, are often mass-produced or produced with limited variation, and often have functional utility apart from any communicative value they might have." *See* San Diego Municipal Code § 63.0502 (emphasis in original).

COMPLAINT - 5

**II.    Defendant City of San Diego provides no training whatsoever to its Park Rangers on free speech protections, little training on what constitutes "expressive activities" subject to First Amendment protections, and is deliberately indifferent to ongoing constitutional violations by its agents.**

32.    Defendant City of San Diego provides no training on First Amendment free-speech protections to its Park Rangers.

33.    Defendant City of San Diego expects Park Rangers to have received training on free speech rights *prior to* being hired by the Parks and Recreation Department.

34.    Defendant City of San Diego has provided only minimal training to its Park Rangers on First Amendment free expression protections *prior to* the passage of Ordinance No. 21775.

35.    In February 2023, a San Diego artist wrote to the Director of San Diego Parks and Recreation complaining of a "lack of training" for the Park Rangers related to First Amendment protections and creative expression by artists.

36.    In July 2023, a different San Diego artist wrote to the Director of San Diego Parks and Recreation imploring him to: "Please help educate [a specific San Diego Park Ranger] and the other rangers on first amendment rights and change their whole approach to actually make the park a better place, not a citation and harassment war zone for peaceful and creative people."

37.    Prior to the passage of Ordinance No. 21775, Defendant City of San Diego issued a "Staff Report" on February 6, 2024, indicating that the "Mayor's office has expressed commitment to train law

COMPLAINT - 6

enforcement and City staff involved in enforcing these regulations to ensure fair and appropriate application of the new regulations."

38. But, despite this "commitment to train" and despite knowledge of prior complaints about lack of First Amendment training for Park Rangers, Defendant City of San Diego provided no First Amendment training to Park Rangers following passage of Ordinance No. 21775 (in February 2024), and before Ms. Duvall's citations in August 2024 and May 2025 (described *infra*).

**III.    Sara Duvall is a "visual artist": she is a San Diegan who uses her artwork to communicate her personal and political beliefs, her lived experiences, and to explore color and form.**

39. Sara Duvall is a San Diego native and a local artist:



COMPLAINT - 7



40.    Ms. Duvall has been creating art, sharing her art with the public, and teaching art for many years.

41.    Ms. Duvall has trained in art locally.

COMPLAINT - 8

42.   She has also studied art internationally:



43.   Ms. Duvall's artwork has been shown in galleries:



COMPLAINT - 9





COMPLAINT - 10

44.    She has received awards for her art as well:





COMPLAINT - 11

1

2

45.    Ms. Duvall's art is an expression of her beliefs and lived

experiences:

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28



1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24



25   46.   She also explores her thoughts on color and form through her

26   artwork. *Cf. White v. City of Sparks*, 500 F.3d 953, 956 (9th Cir.

27   2007) ("[I]t is clear that [the artist's] self-expression through

28

COMPLAINT - 13

painting constitutes expression protected by the First Amendment. In painting, an artist conveys his sense of form, topic, and perspective. A painting may express a clear social position, as with Picasso's condemnation of the horrors of war in *Guernica*, or may express the artist's vision of movement and color . . . . Any artist's original painting holds potential to 'affect public attitudes,' . . . by spurring thoughtful reflection in and discussion among its viewers. So long as it is an artist's self-expression, a painting will be protected under the First Amendment, because it expresses the artist's perspective".) (internal quotations and citations omitted).

47. Ms. Duvall creates some art in miniature as an expression of her beliefs that all humans should work to minimize their impact on the Earth:



COMPLAINT - 14

48.   When Ms. Duvall shows her art in Balboa Park, it often sparks conversations with park goers about their own experiences with art, why she does work in miniature, and how the art is created.

49.   Ms. Duvall also has a neurological condition called synesthesia.

50.   Sometimes, she uses her art to explore this experience.

51.   Specifically, Ms. Duvall creates art involving the human form cleaved into two halves, the sensation she experiences with synesthesia:



1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28





COMPLAINT - 16

52.  Ms. Duvall also uses her art to explore language, politics, and to express her beliefs and values:





53.  All of her artwork is "visual art."

54.  Ms. Duvall has been sharing her artwork in Balboa Park for years.

55.  Before the passage of the 2024 revisions to the San Diego Municipal Code, during enforcement encounters, Defendant City

COMPLAINT - 17

of San Diego Park Rangers would typically ask Ms. Duvall if the visual art she was showing was her own original artwork.

56.    After explaining that each item is unique, her own work of art, made by her hand, and containing her own original designs, perspective, and selection of colors, San Diego Park Rangers would allow her to continue to show and sell her artwork—just as they allow her fellow artists to do to this day.

57.    But, since the 2024 revision to the San Diego Municipal Code, Ms. Duvall has been singled out from other artists in Balboa Park and cited and fined—repeatedly—by San Diego Park Rangers who no longer consider her to be a "visual artist."

58.    Instead of treating Ms. Duvall as a "visual artist" engaged in protected speech or "*expressive activity*" (see San Diego Municipal Code § 63.0501(a)), Defendant City of San Diego now considers her a "sidewalk vendor" who makes "handcrafts."

59.    Thus, even though Defendant City of San Diego defines "expressive activity" as including: "the sale of artwork" and describes "*visual art* sold by the artist" as "inherently communicative in nature" (see San Diego Municipal Code § 63.0502 (emphasis in original)), and also defines "[*v*]*isual art*" as including "sculptures" (*id.*), San Diego Park Rangers have erroneously determined that Ms. Duvall is no longer a visual artist.

//

//

COMPLAINT - 18

**IV.** **Despite Ms. Duvall being a "visual artist" sharing her own original, expressive artwork and political speech, Defendant City of San Diego defines her artwork as "handcrafts" not entitled to First Amendment protections—repeatedly citing and fining her.**

60. On August 2, 2024, Ms. Duvall was cited and fined for various violations of Defendant City of San Diego's "Sidewalk Vending Regulations":

**§36.103 Vending Permit Required**, (a) No *vending* shall take place except in accordance with the provisions of this Division or when otherwise authorized by the City. (b) All *sidewalk vendors* shall obtain a *vending permit* prior to *vending* on any *sidewalk*. Permits shall be issued by the City Manager or designee, unless otherwise specified in the Code. (Emphasis in original.)

**§36.0107 Vending in Parks, Plazas, and Beach Areas**, The following provisions apply in *parks*, *plazas*, and *beach areas*. Where the following provisions are more restrictive than those set forth in section 36.0106, *sidewalk vendors* shall comply with the more restrictive provisions: (g) *Vending* activities are prohibited in the following locations in Balboa Park: (1) within 25 feet of: El Prado. . . . & (i) *Vending* is prohibited during the *summer moratorium* in Balboa Park . . . . (Emphasis in original.)

61. On August 2, 2024, Ms. Duvall was showing original, expressive "visual art."

62. Some of the "visual art" Ms. Duvall was showing that day expressed her personal, political beliefs.

63. This "visual art" included speech expressing support for LGBTQ+ pride, both through colors and words:

COMPLAINT - 19



64. This "visual art" also included speech expressing support for gun control and opposition to book bans:



65.  Through Ms. Duvall's original, unique artwork expressing support for LGBTQ+ rights and against book bans, Ms. Duvall was engaging in protected political speech on August 2, 2024.

66.  Some "visual art" shown by Ms. Duvall expressed her respect for nature and the natural world around us:



67.  With each original, unique work of art Ms. Duvall was sharing in Balboa Park on August 2, 2024, she was engaging in protected First Amendment activity.

68.  Other "visual art" were personal expressions and explorations of design, color, and form:

//

//

//

//

COMPLAINT - 21



69. Ms. Duvall shared her artwork in miniature with the public to spark conversations about the artists' role in the world and impact on the environment.

70. Ms. Duvall's artwork that does not contain written words is no less protected by the First Amendment than her work that does, as "the Constitution looks beyond written or spoken words as mediums of expression." *Hurley v. Irish-Am. Gay, Lesbian & Bisexual Grp. of Bos.,* 515 U.S. 557, 569 (1995).

71. The Constitution does not require "a narrow, succinctly articulable message" as a precondition of First Amendment protection. *Id.*

COMPLAINT - 22

72. The Supreme Court has noted that to hold otherwise would mean that the First Amendment "would never reach the unquestionably shielded painting of Jackson Pollock, music of Arnold Schöenberg, or Jabberwocky verse of Lewis Carroll." *Id.*

**V.** **Defendant City of San Diego ignores Ms. Duvall's appeal of her citation for months, leaving Ms. Duvall in limbo and afraid to exercise her First Amendment right to share her political beliefs and her artwork.**

73. Ms. Duvall filed her notice of appeal on August 7, 2024, just five days after receiving her citation, well within the required time period.

74. Defendant City did not confirm receipt of her notice of appeal.

75. Since there is limited time to lodge an appeal (10 calendar days), on August 9, 2024, Ms. Duvall again contacted Defendant City to confirm receipt of her notice of appeal.

76. Again, no response was received.

77. On August 12, 2024, Ms. Duvall contacted Defendant City once more to confirm receipt of her notice of appeal.

78. Finally, on August 13, 2024, Defendant City confirmed receipt of Ms. Duvall's notice of appeal for her August 2, 2024 citation.

79. Ms. Duvall received no further information about her appeal for over eight months.

80. During this time, Ms. Duvall nervously awaited resolution of her appeal.

//

//

COMPLAINT - 23

81. She wanted to continue to show her art in Balboa Park, but without a resolution to her appeal, Ms. Duvall was reluctant to return to the Park with her art.

82. Ms. Duvall repeatedly refrained from showing her art, expressing her political opinions, and engaging with the public (and thus exercising her First Amendment rights) in Balboa Park because of the uncertainty surrounding the constitutionality of the "handcrafts" definition and the "Sidewalk Vending Regulations" as applied to her art.

83. Ms. Duvall had previously been informed by San Diego Park Rangers that they, in addition to citing and fining her, could also seize and impound her art.

84. She also feared returning to Balboa Park to show her art because of these threats of impoundment.

85. Ms. Duvall worried that because of its delicate and breakable nature, her art could be severely damaged or destroyed if seized and impounded.

86. Further, Defendant City's impoundment policy appears to be itself unlawful.

87. In January 2026, a California state appellate court reversed a trial court's refusal to grant a preliminary injunction against the City of San Diego's policy of impounding property as a penalty for violations of its "Sidewalk Vending Regulations," finding that the City's policy of impoundment likely violates state law. *See Mustaqeem v. City of San Diego*, No. D085750, 2026 WL 174947,

COMPLAINT - 24

at *10 (Cal. Ct. App. Jan. 22, 2026) ("Based on our *de novo* review of the underlying statutory analysis issue, we conclude there is a substantial likelihood that Mustaqeem will succeed on the merits of his claim that the City does not have the authority to impound sidewalk vendor equipment and/or goods under section 36.0111.").

88.   Ultimately, with no resolution in sight for her appeal, Ms. Duvall returned to Balboa Park to show her art.

**VI.   With her appeal still unresolved after eight months, Ms. Duvall returns to Balboa Park, but is again cited and fined by Defendant City of San Diego—she files yet another appeal.**

89.   On May 9, 2025, Ms. Duvall was again cited for showing her original, unique works of art in Balboa Park:



COMPLAINT - 25



COMPLAINT - 26

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21



22   90.   The May 9, 2025 citation listed the following violations:

§36.103 Vending Permit Required, (a) No *vending* shall take
place except in accordance with the provisions of this Division or
when otherwise authorized by the City. (b) All *sidewalk vendors*
shall obtain a *vending permit* prior to *vending* on any *sidewalk.*
Permits shall be issued by the City Manager or designee, unless
otherwise specified in the Code. (Emphasis in original.)

COMPLAINT - 27

**§36.0107 Vending in Parks, Plazas, and Beach Areas**, The following provisions apply in *parks*, *plazas*, and *beach areas*. Where the following provisions are more restrictive than those set forth in section 36.0106, *sidewalk vendors* shall comply with the more restrictive provisions: (g) *Vending* activities are prohibited in the following locations in Balboa Park: (1) within 25 feet of: El Prado. . . .

91. On May 12, 2025, Ms. Duvall informed the City that she would be appealing her second citation.

92. The City did not respond.

93. Because there is limited time to pursue an appeal, on May 14, 2025, Ms. Duvall again contacted Defendant City to confirm her notice of appeal regarding her May 9, 2025 citation.

94. The City again did not confirm receipt of her notice of appeal.

95. Ms. Duvall yet again contacted Defendant City to confirm receipt of her notice of appeal on May 19, 2025.

96. Finally on May 22, 2025, the City confirmed receipt of her notice of appeal.

97. Both of her citation appeals were timely filed.

98. While Ms. Duvall's appeals were pending, the Ninth Circuit found the portions of Defendant City's Ordinance No. 21775 prohibiting the teaching of yoga without a permit to be a content-based restriction on speech. *Hubbard v. City of San Diego*, 139 F.4th 843, 851 (9th Cir. 2025) (describing the "content-based nature of" Ordinance No. 21775 as "obvious") (internal quotation marks and citation omitted).

COMPLAINT - 28

99. The Court also found that Defendant City's Ordinance No. 21775 "does not qualify as a valid time, place, and manner restriction, and is presumptively unconstitutional." *Hubbard v. City of San Diego*, 139 F.4th 843, 852 (9th Cir. 2025).

**VII.     Ms. Duvall ultimately loses her appeals when the Administrative Hearing Officer indicates he cannot consider Ms. Duvall's constitutional claims in the determination of her appeal.**

100. Finally on November 13, 2025, Ms. Duvall's August 2024 and May 2025 citations were heard by an Administrative Hearing Officer.

101. Ms. Duvall argued that her artwork was protected by the First Amendment and that she should be treated as other "visual artists" within the City of San Diego are treated (and as she had been treated before the 2024 revisions to the municipal code).

102. Ms. Duvall argued that considering her original artwork to be a "handcraft" and applying the "Sidewalk Vending Regulations" to her artwork resulted in a violation of her First Amendment rights.

103. Defendant City of San Diego took the position that Ms. Duvall's artwork is a "handcraft" not worthy of full First Amendment protections.

104. Defendant City of San Diego argued Ms. Duvall's artwork was non-expressive "handcrafts" even if it contained explicit speech (i.e., expressing political opinions such as "Say Gay" or "Ban Guns, Not Books") and thus subject to the "Sidewalk Vending Regulations."

COMPLAINT - 29

105. Ultimately, the Administrative Hearing Officer found he lacked the power to consider Ms. Duvall's constitutional claims.

106. He found that such "constitutional challenges . . . are not properly addressed in an administrative hearing."

107. Accordingly, on November 23, 2025, the Administrative Hearing Officer issued an order upholding the citations and ordering Ms. Duvall to pay the fines ($750) to the City of San Diego.

108. Ms. Duvall paid her fines (under protest) as ordered to the City of San Diego.

109. Ms. Duvall seeks constitutional relief before this Court to enable her to engage in her First Amendment speech and expression.

110. Ms. Duvall seeks to continue to share her "visual art" in traditional public forums through the City of San Diego.

111. She has not been sharing her "visual art" out of fear of being cited and fined yet again by Defendant City of San Diego.

112. She has not been sharing her "visual art" out of fear of having her art impounded and damaged by Defendant City of San Diego.

113. Ms. Duvall seeks to be treated as other "visual artists" are treated within the City of San Diego and subjected to the "expressive activity" regulations not the "Sidewalk Vending Regulations."

//

//

//

//

//

COMPLAINT - 30

**FIRST CLAIM – Violation of 42 U.S.C. § 1983 (Defendant City's "Sidewalk Vending Regulations" and Ordinance No. 21775 are an Unconstitutional Official Policy As-Applied to Ms. Duvall's Original Artwork Containing *Protected Speech* Under the First and Fourteenth Amendments).**

114. Ms. Duvall hereby alleges and incorporates by reference each and every allegation contained in the preceding and subsequent paragraphs of this Complaint as if pled expressly herein.

115. Ms. Duvall has a First Amendment right to engage in protected speech within public forums.

116. Ms. Duvall's artwork is an expression of her beliefs and lived experiences.

117. Some of Ms. Duvall's artwork explores language and some of her artwork uses words to express support for her political beliefs.

118. Some of the artwork Ms. Duvall has been penalized for showing includes her political statement: "Say Gay."

119. Some of the artwork Ms. Duvall has been penalized for showing includes her political statement: "Ban Guns, Not Books."

120. Ms. Duvall is attempting to exercise her First Amendment right to free speech when she shares her political artwork in traditional public forums within the City of San Diego.

121. Defendant City of San Diego is violating Ms. Duvall's First and Fourteenth Amendment rights by citing and fining her for engaging in protected speech in a public forum.

COMPLAINT - 31

122. Defendant City of San Diego is violating Ms. Duvall's First and Fourteenth Amendment rights by refusing to treat her as other artists/speakers within the City of San Diego are treated.

123. Defendant City of San Diego is violating Ms. Duvall's First and Fourteenth Amendment rights by declaring her original political artwork to be non-expressive "handcrafts" unworthy of First Amendment protections.

124. The "First Amendment doctrine does not disfavor nontraditional media of expression." *Comedy III Prods., Inc. v. Gary Saderup, Inc.*, 25 Cal. 4th 387, 399 (2001).

125. That is, Ms. Duvall's political speech using clay as a medium is no less protected under the First Amendment than written or spoken words.

126. Ms. Duvall's political speech is no less protected under the First Amendment if it is expressed on jewelry, pins, or magnets.

127. San Diego Park Rangers, in citing, fining, and threatening Ms. Duvall with impoundment, are acting under color of law.

128. In citing, fining, and threatening Ms. Duvall with impoundment, San Diego Park Rangers are acting pursuant to an expressly adopted municipal ordinance of the Defendant City of San Diego.

129. The Defendant City of San Diego's "Street Vending Regulations" and the "handcrafts" definition of Ordinance No. 21775 are unconstitutional as-applied to Ms. Duvall's speech and caused the deprivation of her rights by San Diego Park Rangers.

COMPLAINT - 32

130. That is, the Defendant City of San Diego's unconstitutional municipal ordinance, as-applied to Ms. Duvall's political speech, is so closely related to the deprivation of her rights as to be the moving force that caused the ultimate injury.

131. Defendant City of San Diego is violating Ms. Duvall's First and Fourteenth Amendment rights by penalizing her (through citations, fines, and threats of impoundment) for her protected speech activities in San Diego's traditional public forums.

132. Defendant City of San Diego "can be sued directly under § 1983 for monetary, declaratory, or injunctive relief where . . . the action that is alleged to be unconstitutional implements or executes a[n] . . . ordinance."[1]

133. Defendant City of San Diego is violating or imminently will violate the First Amendment by enforcing the "Sidewalk Vending Regulations" of Ordinance No. 21775 against Ms. Duvall's protected speech.

134. Ms. Duvall suffered damages directly resulting from her citation and fines in an amount to be proven at trial.

135. Ms. Duvall's damages include, but are not limited to, the fines she has paid, her attorneys' fees, her inability to freely show her political art in San Diego's public forums as well as emotional damages including stress and anxiety.

---

[1] *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 690 (1978).

COMPLAINT - 33

**SECOND CLAIM – Violation of 42 U.S.C. § 1983 (Defendant City's "Sidewalk Vending Regulations" and Ordinance No. 21775 are an Unconstitutional Official Policy As-Applied to Ms. Duvall's *Original, Expressive Artwork* Under the First and Fourteenth Amendments).**

136.    Ms. Duvall hereby alleges and incorporates by reference each and every allegation contained in the preceding and subsequent paragraphs of this Complaint as if pled expressly herein.

137.    Ms. Duvall's artwork is an expression of her beliefs and lived experiences.

138.    Ms. Duvall explores color and form through her artwork.

139.    Ms. Duvall's art in miniature is an expression of her beliefs that humans should work to minimize their impact on the Earth.

140.    Ms. Duvall's artwork exploring the cleft human form is an expression of her experience with the neurological condition, synesthesia.

141.    Ms. Duvall is attempting to exercise her First Amendment right to free expression when she shares her artwork in traditional public forums within the City of San Diego.

142.    Defendant City of San Diego is violating Ms. Duvall's First and Fourteenth Amendment rights by citing and fining her for engaging in an "expressive activity."

143.    Defendant City of San Diego is violating Ms. Duvall's First and Fourteenth Amendment rights by refusing to treat her as other "visual artists" within the City of San Diego are treated.

COMPLAINT - 34

144.   Defendant City of San Diego is violating Ms. Duvall's First and Fourteenth Amendment rights by declaring her original, expressive artwork to be non-expressive "handcrafts" not worthy of First Amendment protections.

145.   San Diego Park Rangers, in citing, fining, and threatening Ms. Duvall with impoundment, are acting under color of law.

146.   In citing, fining, and threatening Ms. Duvall with impoundment, San Diego Park Rangers are acting pursuant to an expressly adopted municipal ordinance of the Defendant City of San Diego.

147.   The Defendant City of San Diego's "Street Vending Regulations" and "handcrafts" definition of Ordinance No. 21775 are unconstitutional as-applied to Ms. Duvall's original expressive art and caused the deprivation of her rights by San Diego Park Rangers.

148.   That is, the Defendant City of San Diego's unconstitutional municipal ordinance as-applied to Ms. Duvall's expressive conduct is so closely related to the deprivation of her rights as to be the moving force that caused the ultimate injury.

149.   Defendant City of San Diego is violating Ms. Duvall's First and Fourteenth Amendment rights by penalizing her (through citations, fines, and threats of impoundment) for her expressive activities in San Diego's traditional public forums.

150.   Defendant City of San Diego "can be sued directly under § 1983 for monetary, declaratory, or injunctive relief where . . . the action

COMPLAINT - 35

that is alleged to be unconstitutional implements or executes a[n] . . . ordinance."[2]

151. Defendant City of San Diego is violating or imminently will violate the First Amendment by enforcing the "Sidewalk Vending Regulations" of Ordinance No. 21775 against Ms. Duvall's protected expression.

152. Ms. Duvall suffered damages directly resulting from her citation and fines in an amount to be proven at trial.

153. Ms. Duvall's damages include, but are not limited to, the fines she has paid, her attorneys' fees, her inability to freely show her art in San Diego's public forums as well as emotional damages including stress and anxiety.

**THIRD CLAIM – Violation of 42 U.S.C. § 1983 (Unconstitutional Official Policy Under the First and Fourteenth Amendments/Due Process Clause-Vagueness).**

154. Ms. Duvall hereby alleges and incorporates by reference each and every allegation contained in the preceding and subsequent paragraphs of this Complaint as if pled expressly herein.

155. The definition of "handcrafts" used by Defendant City of San Diego in its municipal code is unconstitutionally vague[3]  and thereby violates the Due Process Clause of the U.S. Constitution.

---

[2] *Monell*, 436 U.S. at 690.

[3] *See Butcher v. Knudsen,* 38 F.4th 1163, 1169 (9th Cir. 2022) ("When a law implicating free speech is impermissibly vague, it risks repressing the very discourse that the First Amendment protects and

COMPLAINT - 36

156. A person of common intelligence, reading the definition of "handcrafts", would not be provided fair notice of what is prohibited by the ordinance.

157. For example, Defendant City of San Diego's Ordinance No. 21775 indicates that "handcrafts" are "*not likely* to communicate a message, idea, or concept to others." *See* San Diego Municipal Code § 63.0502 (emphasis added).

158. Additionally, Defendant City of San Diego's Ordinance No. 21775 indicates that "handcrafts" are "*often* mass-produced or produced with limited variation." *Id.* (emphasis added).

159. Defendant City of San Diego's Ordinance No. 21775 also indicates that "handcrafts" . . . "*often have a functional utility* apart from any communicative value they might have." *Id.* (emphasis added).

160. Ordinance No. 21775's unconstitutionally vague descriptions of what are considered unprotected "handcrafts" fails to provide sufficient standards to guide enforcement by Park Rangers, resulting in arbitrary and discriminatory enforcement.

161. Defendant City of San Diego Park Rangers are acting under color of law when they enforce Ordinance No. 21775 against Ms. Duvall.

---

encourages.") (citation omitted); *Høeg v. Newsom*, 652 F. Supp. 3d 1172, 1185 (E.D. Cal. 2023) ("Vague statutes are particularly objectionable when they 'involve sensitive areas of First Amendment freedoms' because 'they operate to inhibit the exercise of those freedoms.'") (citations omitted).

COMPLAINT - 37

162. Defendant City of San Diego Park Rangers have penalized Ms. Duvall for showing and selling artwork that explicitly expresses her political opinion "Say Gay" because they consider them non-expressive "handcrafts."

163. Defendant City of San Diego Park Rangers have penalized Ms. Duvall for showing and selling artwork that expresses her political opinion "Ban Guns, Not Books" because they consider them non-expressive "handcrafts."

164. The enforcement of Defendant City of San Diego's Ordinance No. 21775 against Ms. Duvall shows that it reaches a substantial amount of constitutionally protected speech.

165. Defendant City of San Diego's definition of "handcrafts" covers all "objects made . . . by hand" and does not exclude those made by artists with an expressive purpose. *See* San Diego Municipal Code § 63.0502 ("*Handcrafts*" are "objects made either by hand or with the help of devices used to shape or produce the objects. . . .").

166. The enforcement of Defendant City of San Diego's Ordinance No. 21775 against Ms. Duvall's original sculptural "visual art" shows that it reaches a substantial amount of constitutionally-protected expressive conduct and as such is unconstitutionally vague.

167. Defendant "can be sued directly under § 1983 for monetary, declaratory, or injunctive relief where . . . the action that is alleged

COMPLAINT - 38

to be unconstitutional implements or executes a[n] . . . ordinance."[4]

168. Defendant is violating or imminently will violate the First and Fourteenth Amendments by enforcing its definition of "handcrafts" against protected speech or expression.

169. Ms. Duvall suffered damages directly resulting from her citation and fines in an amount to be proven at trial.

170. Ms. Duvall's damages include, but are not limited to, the fines she has paid, her attorneys' fees, her inability to freely show her art in San Diego's public forums as well as emotional damages including stress and anxiety.

## FOURTH CLAIM – Violation of 42 U.S.C. § 1983 (Unconstitutional Official Policy Under the First/Fourteenth Amendments-Overbreadth).

171. Ms. Duvall hereby alleges and incorporates by reference each and every allegation contained in the preceding and subsequent paragraphs of this Complaint as if pled expressly herein.

172. The definition of "handcrafts" used by Defendant City of San Diego in its municipal code is unconstitutionally overbroad and thereby violates the First Amendment free speech and free expression protections of the U.S. Constitution.

173. Defendant City of San Diego's definition of "handcrafts" prohibits a substantial amount of constitutionally-protected speech.

---

[4] *Monell*, 436 U.S. at 690.

COMPLAINT - 39

174. Defendant City of San Diego's definition of "handcrafts" prohibits a substantial amount of constitutionally-protected expression.

175. Defendant City of San Diego's definition of "handcrafts" covers all "objects made . . by hand" and does not exclude those made by artists with an expressive purpose. *See* San Diego Municipal Code § 63.0502 ("*Handcrafts*" are "objects made either by hand or with the help of devices used to shape or produce the objects. . . .").

176. As examples of "handcrafts," Defendant City of San Diego includes those "objects" that are "carv[ed]" as well as those that are "weld[ed]." *See* San Diego Municipal Code § 63.0502.

177. Defendant City of San Diego also includes those "objects" that include "pottery," "metal work," or "jewelry." *See* San Diego Municipal Code § 63.0502.

178. Defendant City of San Diego does not exclude from its definition of "handcrafts" any "objects made . . . by hand" that include constitutionally-protected speech or expression.

179. Defendant City of San Diego Park Rangers are acting under color of law when they cited and fine Ms. Duvall.

180. Defendant City of San Diego Park Rangers have penalized Ms. Duvall for showing and selling artwork that explicitly express her political opinion "Say Gay" because they consider them non-expressive "handcrafts."

181. Defendant City of San Diego Park Rangers have penalized Ms. Duvall for showing and selling artwork that express her

COMPLAINT - 40

political opinion "Ban Guns, Not Books" because they consider them non-expressive "handcrafts."

182. The enforcement of Defendant City of San Diego's Ordinance No. 21775 against Ms. Duvall shows that it reaches a substantial amount of constitutionally-protected speech.

183. Defendant City of San Diego's Ordinance No. 21775 also fails to provide sufficient standards to guide enforcement by Park Rangers, resulting in arbitrary and discriminatory enforcement.

184. The enforcement of Defendant City of San Diego's Ordinance No. 21775 against Ms. Duvall's original sculptural "visual art" shows that it impermissibly reaches a substantial amount of constitutionally-protected expressive conduct and as such is unconstitutionally overbroad.

185. Defendant "can be sued directly under § 1983 for monetary, declaratory, or injunctive relief where . . . the action that is alleged to be unconstitutional implements or executes a[n] . . . ordinance."[5]

186. Defendant is violating or imminently will violate the First Amendment by declaring protected speech or expression to be non-expressive "handcrafts".

187. Ms. Duvall suffered damages directly resulting from her citation and fines in an amount to be proven at trial.

---

[5] *Monell*, 436 U.S. at 690.

COMPLAINT - 41

188. Ms. Duvall's damages include, but are not limited to, the fines she has paid, her attorneys' fees, her inability to freely show her art in San Diego's public forums as well as emotional damages including stress and anxiety.

**FIFTH CLAIM – Violation of 42 U.S.C. § 1983 (Failure to Train).**

189. Ms. Duvall hereby alleges and incorporates by reference each and every allegation contained in the preceding and subsequent paragraphs of this Complaint as if pled expressly herein.

190. Defendant City of San Diego has a policy of failing to train its Park Rangers on free speech protected by the First Amendment and this policy resulted in damages to Ms. Duvall.

191. Defendant City of San Diego has a policy of failing to train its Park Rangers on free expression protected by the First Amendment and this policy resulted in damages to Ms. Duvall.

192. Ms. Duvall was in a traditional public forum within the City of San Diego when she was cited, fined, and threatened with impoundment.

193. Ms. Duvall was engaged in free speech protected by the First Amendment when she was cited, fined, and threatened with impoundment.

194. Ms. Duvall was engaged in an expressive activity protected by the First Amendment when she was cited, fined, and threatened with impoundment.

195. San Diego Park Rangers, in citing, fining, and threatening Ms. Duvall with impoundment, were acting under color of law.

COMPLAINT - 42

196. San Diego Park Rangers, in citing, fining, and threatening Ms. Duvall with impoundment, deprived her of her First and Fourteenth Amendment rights.

197. Defendant City of San Diego failed to adequately train its Park Rangers on free speech protected under the First Amendment.

198. Defendant City of San Diego failed to adequately train its Park Rangers on expressive activities protected under the First Amendment.

199. Defendant City of San Diego was notified, repeatedly, that its Park Rangers were in need of training on First Amendment protections relative to free speech and free expression.

200. Defendant City of San Diego was deliberately indifferent to the substantial risk that its inadequate First Amendment training policy would result in violations of law by its employees.

201. The failure of the Defendant City of San Diego to provide its employees with adequate training caused the deprivation of Ms. Duvall's First Amendment rights by San Diego Park Rangers; that is, the Defendant City of San Diego's failure to adequately train its employees played a substantial part in bringing about or actually causing the injury or damage to Ms. Duvall.

202. Defendant City of San Diego deprived Ms. Duvall of her rights under the First and Fourteenth Amendments under the U.S. Constitution.

203. Defendant "can be sued directly under § 1983 for monetary, declaratory, or injunctive relief where . . . the action that is alleged

COMPLAINT - 43

to be unconstitutional implements or executes a[n] . . .
ordinance."[6]

204. Ms. Duvall suffered damages directly resulting from her citations in an amount to be proven at trial.

205. Ms. Duvall's damages include, but are not limited to, the fines she has paid, her attorneys' fees, her inability to freely show her art in San Diego's public forums as well as emotional damages including stress and anxiety.

## DEMAND FOR JURY TRIAL

206. Ms. Duvall hereby demands a jury trial for all applicable causes of action.

## PRAYER FOR RELIEF

WHEREFORE, Ms. Duvall prays that the Court enter judgment in her favor and against the Defendant, and grant the following relief:

207. Declare Ms. Duvall's artwork articulating her political beliefs to be *protected speech* under the First Amendment of the U.S. Constitution;

208. Declare Ms. Duvall's artwork (that does not contain words) a *protected expressive activity* under the First Amendment of the U.S. Constitution;

209. Issue preliminary and permanent injunctive relief restraining Defendant City of San Diego and its employees and agents from

---

[6] *Monell*, 436 U.S. at 690.

COMPLAINT - 44

requiring Ms. Duvall to obtain a "Sidewalk Vending" (San Diego Municipal Code § 36.0101, *et seq*.) permit prior to showing her original artwork in traditional public forums within the City of San Diego;

And award Ms. Duvall:

210.  Compensatory damages, including for emotional harm, in an amount to be proven at trial;

211.  Special damages;

212.  Reasonable attorneys' fees, expert witness fees, and costs pursuant to, among other things, 42 U.S.C. § 1988 and Fed. R. Civ. P. 54;

213.  Pre- and post-judgment interest at the maximum rate allowed by law;

214.  Damages to make up for any adverse tax consequences for any award to Ms. Duvall; and

215.  Any and all other relief to which Ms. Duvall is legally entitled, as this Court may deem appropriate.

Respectfully submitted,

DATED: February 20, 2026    *s/Michele Akemi McKenzie*

MICHELE AKEMI MCKENZIE
TIMOTHY A. SCOTT
**MCKENZIE SCOTT PC**
*Attorneys for Sara Duvall*
Email:
mmckenzie@mckenziescott.com
tscott@mckenziescott.com

COMPLAINT - 45